UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:22-CR-09-REW-HAI-1 |
| | ) | |
| v. | ) | RECOMMENDED DISPOSITION |
| | ) | & ORDER |
| JALEN RASHAD PASLEY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*** *** *** ***

Federal prisoner Jalen Pasley has moved to vacate his conviction and sentence. D.E. 147, 151. Upon initial review, the undersigned now recommends the motion be denied.

## I. Background

Pasley initially came before this Court in February 2022 on a Complaint warrant issued by the undersigned. The Complaint charged conspiracy to distribute 500 grams or more of a methamphetamine mixture, plus possessing a firearm in furtherance of drug trafficking. D.E. 1. The Complaint Affidavit explains how an informant arranged to buy two pounds of meth from Dustin Bice, who used Pasley as his delivery driver. D.E. 1-1. Law enforcement spotted Pasley driving down the interstate on the way to the transaction and pulled him over. But Pasley then drove off at a high speed and crashed into a truck. *Id.* Pasley had a passenger, who told officers that Pasley had a gun in the back seat and that he had thrown some items out of the window. Officers found a pistol in the back seat, then searched the roadside and found two bags of meth, one of which had split open and lost most of its contents. "In all, officers located and seized approximately 400 grams of what appeared to have been close to 2 pounds of suspected meth." *Id*. at 4.

On February 8, 2022, the Court conducted a preliminary hearing and found probable cause. D.E. 12. On February 24, the Grand Jury Indicted Pasley and Bice. Pasley was charged in Count One with conspiracy to distribute 500 grams or more of a meth mixture, with a penalty enhancement for a prior serious violent felony. D.E. 14. Count Two charged Pasley with possessing with intent to distribute 500 grams or more of meth mix (on the date of the vehicle chase), again with a prior violent felony. Count Three charged possession of a firearm in furtherance of the first two counts. *Id.* In June, CJA attorney Michael Fox replaced Pasley's prior appointed counsel. D.E. 57, 58.

On September 16, 2022, Pasley pleaded guilty before the undersigned to Count One of the Indictment. D.E. 71. The plea agreement (D.E. 74) and transcript (D.E. 123) are in the record. Under the plea agreement, Pasley waived his appellate and collateral-attack rights, except the right to appeal his sentence and his postconviction right to allege ineffective assistance of counsel. D.E. 74 ¶ 7.

After District Judge Wier accepted the guilty plea and scheduled sentencing, Pasley, through counsel, filed a motion to withdraw the plea. D.E. 82. According to the motion, "Mr. Pasley asserts that he was insufficiently informed of case facts at the time of the plea hearing which hindered his ability to make an informed decision to enter a plea." *Id.* Judge Wier conducted a hearing on November 15, 2022, and denied the motion. D.E. 86. The transcript is filed at Docket Entry 118.

Pasley was sentenced on February 28, 2023. D.E. 98. With a statutory minimum sentence of 15 years (180 months), Pasley's PSR calculated a Guidelines Range of 180 to 188 months. D.E. 100 (PSR) ¶ 62. Judge Wier imposed a prison sentence of 180 months—the statutory minimum

and bottom of Pasley's Guidelines Range. D.E. 99 (Judgment). The transcript of the sentencing hearing is at Docket Entry 119.

Pasley appealed and argued that Judge Wier had failed to explain certain aspects of his future supervised-release conditions. On June 6, 2024, the Court of Appeals affirmed Pasley's sentence. D.E. 133. On October 15, 2024, the Supreme Court denied Pasley's petition for a writ of certiorari. D.E. 136.

On October 14, 2025, the Court received Pasley's *pro se* form petition under 28 U.S.C. § 2255, dated October 11, 2025. D.E. 147. The petition stated that a memorandum in support was forthcoming. The Court received that *pro se* memorandum on November 24, 2025. D.E. 149. Because the memorandum was unsigned, it was returned to Pasley. D.E. 150. The Court received the signed version on January 8, 2026. D.E. 151. The Court excused the fact that the memorandum was forty pages long—well beyond the Joint Local Rules' page-number limitation, but warned that future filings should conform to the applicable Rules. D.E. 150; *see* Joint Local Civil Rule 7.1.

The matter was assigned to the undersigned in accordance with Rule 4 of the Rules Governing Section 2255 Cases to conduct a preliminary review. *See* Rules Governing Section 2255 Cases, Rule 4(b). For purposes of this review, *the Court has accepted as true all of Pasley's factual allegations that are not undermined by the existing record*. Even so, it plainly appears that Pasley is entitled to no relief. The undersigned therefore recommends that his petition be dismissed.

## II. General Legal Standards

Under § 2255, a federal prisoner may seek habeas relief because his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such a sentence, or the

sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255. To prevail on a § 2255 motion alleging constitutional error, a defendant must establish that the error had a "substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). A § 2255 movant bears the burden of proving his or her allegations by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam).

The Court recognizes that Pasley is proceeding *pro se*, without the assistance of an attorney. The Court construes *pro se* motions more leniently than motions prepared by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381-83 (2003).

Pasley's grounds for relief allege ineffective assistance of counsel ("IAC") in violation of his rights under the Sixth Amendment. To successfully assert an IAC claim, a defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

To prove deficient performance, a defendant must show "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Strickland*, 466 U.S. at 688. But "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (internal quotations omitted). The Supreme Court has repeatedly

> said that counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, and that the burden to show that counsel's performance was deficient rests squarely on the defendant. . . . It should go without saying that the absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.

4

*Burt v. Titlow*, 571 U.S. 12, 22-23 (2013) (citations and quotation marks omitted).

To prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome," which "requires a substantial . . . likelihood of a different result," "not just [a] conceivable" one. *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. When evaluating prejudice, courts generally must consider the "totality of the evidence." *Strickland*, 466 U.S. at 695. Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id.* at 697.

The Sixth Amendment right to counsel extends to the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *Missouri v. Frye*, 566 U.S. 134, 140 (2012). Thus, "[d]uring plea negotiations defendants are 'entitled to effective assistance of competent counsel,'" *Lafler*, 566 U.S. at 162 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)), and the two-part test set forth in *Strickland* applies. *Id.* at 162-63 (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). In the plea-bargaining context, a defendant bears the burden of showing the outcome of the plea process would have been different with competent advice. *Lafler v. Cooper*, 566 U.S. 156, 163, (2012).

To show prejudice in the sentencing context, a movant must establish that his "sentence was increased by the deficient performance of his attorney." *Spencer v. Booker*, 254 F. App'x 520, 525 (6th Cir. 2007) (citing *Glover v. United States*, 531 U.S. 198, 200 (2001)).

### III. Pasley Was Not Incompetent

Throughout his memorandum, Pasley alleges that he was incompetent to proceed and his appointed counsel Mr. Fox at various points should have interrupted the proceedings and moved for a competency examination. This argument is unsustainable on the existing record.

A defendant is competent to stand trial if he has "a rational as well as factual understanding of the proceedings against him" and "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam); *see also* 18 U.S.C. § 4241(a) (phrasing test as whether defendant is "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense").

A lawyer can perform deficiently by failing to request a competency examination, but only when "there are sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the defendant's competency." *United States v. Dubrule*, 822 F.3d 866, 881 (6th Cir. 2016) (quoting *Jermyn v. Horn,* 266 F.3d 257, 283 (3d Cir. 2001)). To demonstrate prejudice under that theory, the petitioner must prove "a reasonable probability" that, but for counsel's failure to request a competency evaluation, the result of the proceedings would have been different. *Id*. Again, a reasonable probability is "a probability sufficient to undermine confidence in the outcome," which "requires a substantial . . . likelihood of a different result," "not just [a] conceivable" one. *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011).

Here, Pasley says Mr. Fox should have noticed "red flags" and Pasley's "overwhelming signs of confusion and emotional instability" and "clear evidence of mental incompetence." D.E. 151 at 26-28. He explains:

> From the record, Pasley suffered from Bipolar Disorder, Anxiety, and chronic insomnia (. . . including treatment for psychiatric disorders dating back to age ten

. . .) all of which substantially impaired his ability to rationally comprehend the proceedings or voluntarily enter a plea.  At sentencing, Pasley himself expressed confusion and distress, stating, "Everyone knows the drugs were fake," and "I feel like what I did with this whole case was fabricated,"—remarks that demonstrated a fundamental misunderstanding of the charges and proceedings.

*Id.* at 26-27.

The Court queried Pasley's competency and mental health at his rearraignment.  Pasley stated that he had completed the eleventh grade and then earned a GED.  D.E. 123 at 9.  Since then, he had "picked up trades," but not pursued other education.  He was able to read and write in English and managed his own finances.  *Id*.  The Court continued:

| | |
|---|---|
| COURT: | Are you being treated by a psychiatrist or other mental health professional for any reason? |
| PASLEY: | No, sir. |
| COURT: | Have you ever been diagnosed with any mental illness? |
| PASLEY: | Yes, sir. |
| COURT: | What's that? |
| PASLEY: | Bipolar syndrome. |
| COURT: | Anything else? |
| PASLEY: | Not that I know of. |
| COURT: | Okay. So you've been diagnosed with bipolar disorder; is that right? |
| PASLEY: | Yes, sir. |
| COURT: | When did that happen? |
| PASLEY: | When I was younger. |
| COURT: | Okay. Were you hospitalized for that or anything like that? |
| PASLEY: | No, sir. |
| COURT: | Do you take any medication for it now? |

PASLEY:      No, sir.  It's been a long time.

COURT:       About how long?

PASLEY:      Over ten years.

COURT:       Do you have any symptoms of that disorder today?

PASLEY:      No, sir.

COURT:       Have you ever been treated or hospitalized for any other mental illness?

PASLEY:      No, sir.

. . . .

COURT:       Have you understood everything I've said to you so far today?

PASLEY:      Yes, sir.

COURT:       Did you meet with your lawyer before we started today?

PASLEY:      Yes, sir.

COURT:       Were you able to understand him when you met with him?

PASLEY:      Yes, sir.

COURT:       Were you able to communicate effectively with him when you met with him?

PASLEY:      Yes, sir.

COURT:       Were you able to work with him effectively to prepare for the hearing?

PASLEY:      Yes, sir.

COURT:        As you sit there, do you have any personal doubts about your competency?

PASLEY:      No, sir.

COURT:       Do you think that you are clear-headed enough today to make good decisions about your rights?

PASLEY:      Yes, sir.

| | | |
|---|---|---|
| COURT: | | Okay. Have you had any problems communicating with your client in the case, Mr. Fox? |
| MR. FOX: | | No, Your Honor. |
| COURT: | | Do you have any reason to believe he does not understand the nature of the charges in the case or that he's impaired in any way? |
| MR. FOX: | | Not at all. |
| COURT: | | Has he assisted you effectively in defending the charges? |
| MR. FOX: | | Yes. |
| COURT: | | Has he displayed any irrational or erratic conduct? |
| MR. FOX: | | No, sir. |
| COURT: | | At any point, have you perceived the need for a competency evaluation? |
| MR. FOX: | | No. |
| COURT: | | All right.  [AUSA] Dotson, does the government have any reason to question the defendant's competency today? |
| DOTSON: | | No, Your Honor. |
| COURT: | | Okay.  You're understanding everything that's being said.  I have no doubt that you're competent today.  Your responses are appropriate.  Based on those and what the lawyers have said, the hearing can go forward because you're competent.  All right? |
| PASLEY: | | Okay. |

D.E. 123 at 10-13.  Pasley demonstrated he understood the charge and the facts in the plea agreement, including the meaning of "conspiracy" and that 500 grams of meth were involved.  *Id*. at 40-45, 48-49.  Pasley also described a legal issue concerning the prior robbery conviction.  *Id*. at 46.  At the end of the proceeding, the Court and Mr. Fox again agreed that Pasley was "fully competent" at the time.  *Id*. at 50.  And Pasley said he had understood everything.  *Id*. at 49.

When he was interviewed by Probation for preparation of the PSR, Pasley

commented he was diagnosed with bipolar disorder at the age of nine by a counselor in Louisville, Kentucky. Records were not received from the provider. Pasley noted he has not been treated or diagnosed with any mental or emotional health condition as an adult. He expressed he may still suffer from bipolar or an undiagnosed condition and he indicated he open to counseling and treatment in the future. In a collateral interview, the defendant's mother expressed that the defendant may suffer from an undiagnosed mental health problem.

PSR ¶ 53. The PSR contains Pasley's own self-report of his mental health between his guilty plea and sentencing. Nothing in his PSR suggests, in the slightest, that Pasley had existing mental health issues that impeded a rational/factual understanding of the proceedings or hampered him from meaningfully consulting with his lawyer.

The PSR does, however, record that, prior to his arrest, Pasley was a daily user of marijuana, Xanax, and prescription pain pills. PSR ¶ 54. Additionally, Pasley "denied participating in any form of substance abuse treatment in the past" but "expressed interest in participating in treatment in the future." *Id.* ¶ 55.

Pasley's competency was also addressed during the hearing on his motion to withdraw his guilty plea. Looking at the existing record, Judge Wier commented:

> I know Mr. Pasley is literate. I know he's got his GED, can read and write English. I know he was competent at the time of the plea, that was well covered by Judge Ingram, so [I have] no concerns about his ability to understand or his actual understanding of what happened during that hearing.

D.E. 118 at 22.

Pasley also says, "both the district court and trial counsel acknowledged at sentencing that Pasley needed mental health treatment, counseling, and medication." D.E. 151 at 28.

In describing the sentencing factors, Judge Wier said,

> When you look at the need for treatment, I think Mr. Pasley needs both substance abuse treatment and I think that he needs mental health treatment and counseling. There are some issues there with his mental health that I think may tie into his drug abuse and also his criminal history. And I think that we can maybe give him some tools to help him with that.

D.E. 119 at 23.  Judge Wier also noted that Pasley

> was diagnosed at nine years of age with bipolar disorder and received treatment for that, and even had some periods of prescription medication.
>
> But that stopped, and I'm not really sure why that stopped, but it stopped at or near before he starts using marijuana at age 16.  So trying to figure out not the "what" but the "why here, I think it is critical that we have mental health treatment and counseling.
>
> He I think has a real issue with bipolar disorder and the things that come along with that, particularly anxiety.

*Id*. at 26-27.  Mr. Fox agreed, and suggested that Pasley's attempt to withdraw his plea was related to his "bipolar anxiety issue."  *Id*. at 29.  Judge Wier said the sentence would include all the treatment opportunities the Court could "muster."  *Id*. at 34.

While it is true that the Court recognized that Pasley would likely need mental health and addiction assistance in the future, such findings are quite common.  And a defendant's need for treatment does not indicate the defendant lacks a rational/factual understanding of the proceedings or is unable to assist with the defense.

> A history of mental illness is relevant to the question whether to conduct further inquiry into competency.  *See United States v. Abdulmutallab*, 739 F.3d 891, 901 (6th Cir. 2014) (citing *Indiana v. Edwards*, 554 U.S. 164, 169 (2008); *Drope v. Missouri*, 420 U.S. 162, 169 (1975); *Pate v. Robinson*, 383 U.S. 375, 378 (1966)).  However, "it does not follow that because a person is mentally ill he is not competent to stand trial."  *United States v. Miller*, 531 F.3d 340, 349 (6th Cir. 2008) (quoting *United States v. Davis*, 93 F.3d 1286, 1290 (6th Cir. 1996)).  Because [Pasley] did not give counsel (or the court) reason to doubt his competency, the mere fact that he [had been] on medication or had a history of mental health issues does not constitute a substantial showing that counsel was ineffective for failing to have him examined.  Relatedly, because there is no basis to find his plea invalid due to his incompetency, his plea was not involuntary.

*Bell v. Parish*, No. 20-2192, 2021 WL 5853687, at *3 (6th Cir. July 20, 2021); *see also Holt v. United States*, No. 20-3904, 2021 WL 4128954, at *2 (6th Cir. Jan. 5, 2021); *United States v. Batayneh*, No. 13-20303, 2018 WL 10419332, at *10 (E.D. Mich. Nov. 5, 2018).

The bottom line is that the Court addressed Pasley's competency, along with his mental-health and addiction issues.  And the existing record does not suggest sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt Pasley's competency.  Nor, on this record, is there a reasonable probability that a competency examination would have changed the outcome in Pasley's favor—the existing outcome being a conviction with a bottom-Guidelines sentence.

For these same reasons, counsel could not have been deficient—and Pasley could not have been prejudiced—by counsel failing to assert an insanity defense or seek a downward departure for diminished capacity under USSG § 5K2.13.  *See* D.E. 151 at 28-29.

### IV.  Pasley Will Be Held to His Sworn Statements

Pasley alleges Mr. Fox avoided investigating and defending the case.  Instead, Fox "push[ed]" and pressure[d]" him into pleading guilty.  D.E. 151 at 15-16.  But this claim contradicts Pasley's own sworn statements in the record.

Federal Rule of Criminal Procedure 11 governs plea colloquies.  The Rule is meant to ensure that the district court is satisfied that a guilty plea is made knowingly, voluntarily, and intelligently.  *United States v. Webb*, 403 F.3d 373, 378 (6th Cir. 2005).  Rule 11 requires the Court to verify "that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged."  *Id.* at 378-79.  When the District Court "has scrupulously followed the required procedure" during a plea colloquy, "the defendant is bound by his statements in response to that court's inquiry."  *Ramos v. Rogers*, 170 F.3d 560, 563 (6th Cir. 1990) (quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)).  Accordingly, in cases where the court has followed Rule 11's procedural requirements, "absent extraordinary

circumstances, or some explanation of why defendant did not reveal other terms, at least when specifically asked to do so by the court, *a defendant's plea agreement consists of the terms revealed in open court*." *Id.*

Regarding these extraordinary circumstances, the Supreme Court has instructed that "misunderstanding, duress, or misrepresentation by others" may render invalid a plea colloquy that otherwise appears properly conducted. *Blackledge v. Allison*, 431 U.S. 63, 75 (1977). However, a defendant's "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." *Id.* at 74; *see also Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) (finding that a conclusory statement is insufficient to raise the issue of ineffective assistance of counsel).

The record does not establish the sort of misunderstanding, duress, or misrepresentation by others that can render an otherwise valid plea involuntary. For example, the Court specifically inquired about such circumstances at Pasley's rearraignment:

Q:    Has the United States made any promises to you that are not included in that plea agreement?

A:    No, sir.

Q:    Other than what's in the plea agreement, has anyone made any promises to you of any kind to get you to sign the plea agreement or to plead guilty today?

A:    No, sir.

Q:    Has anybody guaranteed exactly what your sentence is going to be if you plead guilty?

A:    No, sir.

Q:    Did anybody force you in any way or threaten you in any way to get you to sign the plea agreement or to plead guilty today?

A:    No, sir.

Q:      Did you sign the plea agreement under your own free will?

A:      Yes, sir.

D.E. 123 at 21-22.

Additionally, the last paragraph of the plea agreement, signed by Pasley on September 16, 2022, states: "The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary." D.E. 74 ¶ 13.

Further concerning the waiver provisions discussed in the next section, the Court asked:

Q:      Okay. Mr. Pasley, other than what's in the plea agreement, has anybody promised you anything to get you to waive the [appeal and collateral-attack] rights I've just reviewed with you?

A:      No, sir.

Q:      Has anybody forced you in any way or threatened you in any way to get you to waive those rights?

A:      No, sir.

D.E. 123 at 37-38.

Pasley told a different story during the hearing on his subsequent motion to withdraw his guilty plea. There, Pasley told Judge Wier that he had not seen all the discovery materials and he felt like he "was pressured" to plead guilty despite having not heard the audio recording of the drug transaction to which he pleaded guilty. D.E. 118 at 7-8. Mr. Fox, however, told the Court that he did play all the audio files for Pasley at the jail. *Id*. at 11. And the prosecutor reminded the Court that Pasley testified at rearraignment that he had reviewed all the discovery and was satisfied. *Id*. Judge Wier then summarized the contents of the rearraignment proceeding and described listening to the recording:

I listened to it because sometimes you'll read a black-and-white record and you won't get, you know, you won't get the tone of it, the tenor of it. And so I wanted to go listen to it and see if I could hear: Is Mr. Pasley being dragged through this process? Is he reluctant? Is he hesitant? None of that was present. There was none of that. There was no waffling. There was no doubt as you answered the questions. It was unambiguous. It was clear. It was free of any haze or nuance.

It was a very solid rearraignment hearing without anything that leads me to perceive any lack of access, any lack of readiness, any false urgency on the time. All of that is directly contrary to what the record shows with the defendant under oath, going through a very lengthy and sound plea colloquy.

So, you know, you're telling me today something contrary to what you said at the plea hearing. You're claiming you didn't actually have access to all of the audio. You're claiming that you felt rushed. That is just not -- those are not credible positions to take when I've got a long hearing where, under oath, you've confirmed to the contrary in a situation where I know you're not being rushed.

*Id*. at 19-20. Judge Wier thus found non-credible Pasley's claims about being rushed or pressured into pleading guilty without adequate preparation.

Pasley's current claims about being coerced into pleading guilty contradict his prior sworn statements and this Court's prior findings on the same question. The claims are not credible and therefore fail to establish deficient performance or prejudice by a preponderance of the evidence. Pasley's guilty plea was knowing and voluntary and was not the product of ineffective assistance.

For the same reasons discussed in this section, the Court also rejects any claim by Pasley that Mr. Fox failed to conduct an adequate pretrial investigation. *See* D.E. 151 at 14. As just discussed, the record (including Pasley's prior testimony) establishes that Mr. Fox reviewed the discovery with Pasley. Other than the mental-health issues already discussed and rejected in Section III, Pasley points to no specific favorable facts that an adequate pretrial investigation would have uncovered.

### V.  IAC – Plea Versus Trial

Pasley says that Mr. Fox failed to inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial.  D.E. 151 at 14.  This claim is refuted by the existing record.  When Pasley appeared on the initial Complaint on February 1, 2022, the Court informed him of the possible penalties on a conviction and of his trial rights.  D.E. 5.  The Court then held a preliminary hearing in which the charges and the supporting evidence were described in detail.  D.E. 12.  The subsequent Indictment also described the potential penalties.  D.E. 14.  And the Court explained these penalties at Pasley's arraignment.  D.E. 24.  In June 2022, Mr. Fox joined the case.  D.E. 58.

On September 16, 2022, Pasley signed a plea agreement which described the potential penalties, including statutory incarceration of fifteen years to life, which was an enhanced sentence triggered by Pasley's prior serious-violent-felony conviction.  D.E. 74 ¶ 4.  The § 851 notice in support of this enhanced penalty was filed on April 26, 2022.  D.E. 43.  The Indictment of February 2022 also noted the prior-felony enhancement.  D.E. 14.  This is further evidence of Pasley being informed of the consequences of a conviction.

On September 16, 2022, the Court conducted a thorough rearraignment that included confirming Pasley's awareness of his sentencing exposure.  D.E. 123 at 27-28.  The Court confirmed from Pasley that he and Mr. Fox had discussed Pasley's "rights in general in the case" and "rights at trial."  *Id*. at 13.  The Court also went over Pasley's trial rights, which Pasley said he understood.  *Id*. at 24-26.  At the subsequent plea-withdrawal hearing, Judge Wier noted the rearraignment was "very solid" and Pasley had clearly not been rushed into pleading guilty.  D.E. 118 at 19-20.

Accordingly, Pasley's new assertion that he was not told the relevant circumstances and likely consequences of pleading guilty is contradicted by the record. This includes his own sworn statements. The Court has no basis for finding deficient performance or prejudice on this claim.

Pasley argues, "Rather than exploring possible defenses or trial strategies, Fox immediately impressed upon Pasley that pleading guilty was his only viable option, [and Pasley] acquiesced to the advice without understanding the alternatives or consequences." D.E. 151 at 17. Again, this assertion is inconsistent with Pasley's statements at rearraignment, as already discussed. Further, Pasley does not identify any potential defenses or trial strategies that would likely have resulted in acquittal. Such vague allegations fail to satisfy Pasley's burden of proof. Pasley says Mr. Fox failed "to consult with Pasley about the overall defense strategy [and] prospects of success at trial." *Id*. But this contradicts Pasley's statement in his memorandum that Mr. Fox counseled that a guilty plea would be the "only viable option." *Id*. Obtaining a plea agreement with acceptance-of-responsibility credit and dismissal of two charges is a valid strategy in many federal cases. The record here contains no factual allegations that are not contradicted by the record that could lead to a finding of deficient performance or prejudice on these issues.

## VI. IAC – Plea Negotiations

Pasley faults counsel for failing to "attempt to negotiate a favorable plea agreement." D.E. 151 at 14. At rearraignment, the Court asked about the background to the plea agreement:

COURT:      Okay. Mr. Fox, were all formal plea offers made by the government conveyed to your client?

MR. FOX:    Yes, Your Honor.

COURT:      Do you remember how many there were?

MR. FOX:    I do. I'm the second attorney in the case. There was a plea agreement that was provided prior to my entry of appearance, there was an amended

17

version that came recently, and then there were some errors that needed to be corrected but no substantive changes in the third version.

COURT:      Is that right, [AUSA] Dotson?

DOTSON:    That's my recollection, Your Honor.

COURT:      Mr. Pasley, is your memory of how your plea was negotiated the same as what the lawyers just described?

PASLEY:     Yes, sir.

COURT:      Were you regularly consulting with your attorney during that process?

PASLEY:     Yes, sir.

D.E. 123 at 22-23. Pasley later argued at the plea-withdrawal hearing that he felt unprepared due to having not seen certain video evidence, but the Court found this assertion not credible. D.E. 118. Pasley's plea agreement included dismissal of two Counts, credit for acceptance of responsibility, and an agreed base-offense level based on an agreed converted drug weight. D.E. 74. So, Pasley did obtain a plea agreement that included concessions from the government. And he stated under oath that he consulted with his lawyer during the plea negotiations. The record therefore contains no credible facts suggesting counsel failed to attempt to negotiate a favorable plea agreement.

Pasley also faults counsel for "fail[ing] to move to withdraw Pasley's guilty plea based on clear evidence of mental incompetence." D.E. 151 at 26. First, Mr. Fox did move to withdraw the plea, upon Pasley's instruction. D.E. 82. Second, as discussed in Section III, there was in fact no clear evidence of mental incompetence in Pasley's case. This claim also fails.

## VII. Sentencing Issues.

Pasley raises three other issues that relate to sentencing. First, Pasley claims Mr. Fox failed to "properly discuss" the PSR with him prior to sentencing. He claims,

In this case, Fox only briefly discussed his PSR with Pasley for a few minutes in the basement of the courthouse while waiting to be called before the court. Such a cursory review deprived Pasley of a meaningful opportunity to understand, challenge, or correct the factual findings and guideline calculations contained in the PSR.

D.E. 151 at 30. This is inconsistent with the facts disclosed at sentencing:

| | |
|---|---|
| COURT: | [Mr. Fox, h]ow did you get the report to him and assure his readiness for today? |
| MR. FOX: | Yes, Your Honor. When I received the Presentence Investigation Report, I took two copies to the jail. I went through that. He had a copy in front of him. We went through the [PSR] paragraph by paragraph. |
| COURT: | Are you confident he's ready? |
| MR. FOX: | Yes. |
| COURT: | Thank you. Mr. Pasley, you did get the report? |
| PASLEY: | Yes, sir. |
| COURT: | As you can see, it is a pretty lengthy document, and I always say it is a full history of the crime at issue and of the person at issue, and it is really the foundation for federal sentencing, so it is critical that the defendant himself get that report, have time and ability to go through the entire document; and just as importantly have time to do that and the opportunity to do that with counsel, to talk with the lawyer about the factual component, legal components, potential objections, how the Court is going to use the report.<br><br>All of that takes time and some back and forth and interaction between a defendant and his lawyer to adequately cover all of that ground. Does that make sense to you? |
| PASLEY: | Yes, sir. |
| COURT: | Do you feel like you've had enough time to do all of that? |
| PASLEY: | Yes, sir. |
| COURT: | Do you feel ready for today? |
| PASLEY: | Yes, sir. |

D.E. 119 at 5-7.  Pasley at sentencing expressed no disagreement with Mr. Fox's description of reviewing the PSR paragraph-by-paragraph at the jail.  Pasley's current self-serving assertion in his memorandum is contradicted by his prior sworn statements.  He accordingly does not meet his burden of showing deficient performance or prejudice in regard to reviewing his PSR.

Second, Pasley asserts that counsel failed to "challenge critical PSR findings."  D.E. 151 at 31.  Specifically, he says Mr. Fox should have objected to the attributed drug quantity of 907.2 grams of methamphetamine mixture.  *Id*.  He says he should not have been found liable for more than 400 grams.  *Id* at 31-32.  But in his plea agreement, Pasley pleaded guilty to conspiracy to distribute 500 grams or more.  D.E. 74 ¶¶ 1, 2(c), 3(a).  He admitted he was "responsible for between 500 grams and 1.5 kilograms of a mixture or substance containing methamphetamine." *Id*. ¶ 3(j).  Pasley then agreed under oath at rearraignment that the government would be able to prove beyond a reasonable doubt that the conspiracy involved 500 grams or more of meth mixture.  D.E. 123 at 40-41.  He agreed that all the facts in paragraph 3 of the plea agreement were true and accurate.  *Id*. at 43-45.  The Court dug in further:

COURT:     I need to hear your explanation of what you think the government can prove that you did.

PASLEY:     I feel like by way of relevant conduct, my personal, what I'm responsible of was enough for them to convict me.

COURT:     Convict you of what?

PASLEY:     Of 500 grams or more.

COURT:     Okay.  Of what?

PASLEY:     Of methamphetamine.

. . . .

COURT:     Now, for you to be convicted, the government has to prove the conspiracy involved 500 grams or more of a mixture or substance containing a

detectable amount of methamphetamine. It has to prove that quantity by proof beyond a reasonable doubt at a trial as well. Do you understand that?

PASLEY:      Yes, sir.

COURT:       Do you think that quantity can be proven to a jury by proof beyond a reasonable doubt?

PASLEY:      Yes, sir.

*Id*. at 41-43. This rearraignment colloquy establishes that Mr. Fox had no valid basis for arguing at sentencing that Pasley could only be held responsible for 400 grams of meth mix. Pasley had already agreed under oath that he had "two pounds of meth" that he threw out his vehicle window during the pursuit. D.E. 74 ¶ 3(h). On the existing record, any IAC claim based on failure to object to the PSR's drug quantity is meritless.

Third, Pasley asserts counsel failed to "present any meaningful mitigation evidence" or object to a substantively unreasonable sentence. D.E. 151 at 37. Pasley then focuses on his own alleged incompetence—a question previously addressed in Section III. As discussed there, the Court was well aware of Pasley's history of mental-health and drug-abuse issues. Yet, at the same time, no one had reason to think he was legally incompetent. Otherwise, Pasley does not identify any material mitigating evidence that was not before the Court. Nor does he explain how his sentence was substantively unreasonable. He also fails his burden of proof on this claim. It can be denied on the existing record.

## VIII. Conclusion

For the reasons discussed herein, the undersigned **RECOMMENDS** that Pasley's § 2255 motion (D.E. 147, 151) be **DENIED** on the merits.

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall [conduct a hearing]." 28 U.S.C. § 2255(b). Here, the existing

record shows Pasley is not entitled to relief.  The essential supporting facts are nothing more than Pasley's self-serving statements which are contradicted by the existing record.  Such statements are incapable of satisfying Pasley's burden of proof.

The undersigned further **RECOMMENDS** that no Certificate of Appealability issue.  Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  *See also* Rule 11 of the Rules Governing Section 2255 proceedings.  This standard is met if the defendant can show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  The Court has considered the issuance of a Certificate of Appealability as to each of Pasley's claims.  No reasonable jurist would find the assessments on the merits above to be wrong or debatable; thus, no Certificate of Appealability should issue.

Any objection to, or argument against, dismissal must be asserted properly and in response to this Recommended Disposition.  The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute.  *See also* Rules Governing Section 2255 Proceedings, Rule 8(b).  Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Judge and Court of

Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Further, **IT IS HEREBY ORDERED THAT**, in accordance with Federal Rule of Civil Procedure 11(a), the Clerk of Court **SHALL STRIKE** the unsigned version of Pasley's memorandum at Docket Entry 149.

This the 21st day of January, 2026.

Signed By:

*Hanly A. Ingram*

**United States Magistrate Judge**